UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                  :

MARIE K. VIGLIANCO,         :
                                  :

              Plaintiff,     :       CASE NO. 1:15-CV-232
                                  :

       v.                    :
                                  :       OPINION & ORDER

ATHENIAN ASSISTED LIVING, LTD., :
ET AL.,                    :       [Resolving Docs. 15, 16]
                                  :

            Defendants.   :
                                  :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Marie K. Viglianco brings suit against her prior employer, Defendant Athenian Assisted Living Ltd. ("Athenian"), as well as its employees Ron Livingston and Edmond Gates (collectively, "Defendants"). Plaintiff brings sex discrimination claims, sex discrimination claims based on pregnancy, intentional infliction of emotional distress claims, negligent hiring and retention claims, and retaliation claims against Defendants.

Defendants move for summary judgment as to all counts.[1] Plaintiff has filed a cross-motion for partial summary judgment as to three counts: federal and state claims for sex discrimination based on a hostile work environment, and the claim for negligent hiring and retention.[2] For the

_____

[1] Doc. 15.
[2] Doc. 16.  The parties filed respective responses.  Docs. 18, 20.  Defendants filed a reply brief.  Doc. 21.

Case No. 1:15-CV-232
Gwin, J.

following reasons, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS and**

**DENIES IN PART** Defendants' motion for summary judgment in accordance with this opinion.

### I. Factual Background

Plaintiff Marie K. Vigliano worked at Athenian Assisted Living, Ltd. ("Athenian") as a

Licensed Practical Nurse from April 2013 to December 2013.[3/]  Athenian is an assisted living

facility.  Plaintiff was hired to work hours on an as-needed basis.[4/]

Susan Durichko was Plaintiff's direct supervisor.  Durichko acted as Athenian's director of

nursing.[5/]  Durichko hired Plaintiff Viglianco.  Durichko set Viglianco's hours on the monthly

schedule.  Plaintiff was consistently staffed to work shifts between April 2013 and December 2013.

However, her hours varied significantly from week to week.[6/]

Defendant Edmund Gates acts as the administrator of Athenian, and oversees Athenian's

business operations.[7/]  Defendant Ron Livingston, who is Gates' uncle, also works at Athenian.  Ron

Livingston is Maintenance Director at Athenian.[8/]  Plaintiff says Livingston sexually harassed her.

---

[3/]Doc. 15 at 2.

[4/]*Id.*; *see also* Doc. 17-1 at 63:23 to 64:14 (complete deposition transcript for Plaintiff Viglianco).  During the time of her employment, Plaintiff did not work sufficient hours to qualify for Family Medical Leave under the company's policy.  *Id.* at 90:18 to 91:7.

[5/]Doc. 15 at 2;  Doc. 17-1 at 92:9-18 ("Q: And was Sue Durichko your supervisor the entire time you worked at Athenian?  A: Yes.  Q: Did you have any other supervisors?  A: No.  Q: Did you report to anybody other than Sue?  A: No.  Q: Did anybody control what you did at work other than Sue? A: No.").

[6/]Doc. 17-1 at 105:3-11 (looking at payroll exhibits and noting variation in weekly hours from 14.5 hours to 66 hours).

[7/]Doc. 16 at 1.

[8/]Doc. 15 at 1.

Case No. 1:15-CV-232
Gwin, J.

> *A. Plaintiff's allegations of sexual harassment.*

Plaintiff identifies three incidents where Defendant Livingston engaged in alleged improper conduct.[9/]

Plaintiff testifies that Livingston approached her in the first three months that Plaintiff worked at Athenian, and said "let me just say that the nurses here are very pretty . . . but you – you are just something else.  You are unbelievably beautiful."[10/]  Plaintiff agreed to the description of Livingston's behavior as "lustful."[11/]  She described feeling uncomfortable and insecure at the time of the interaction.[12/]

Plaintiff testified that she reported the incident to Durichko.  Plaintiff testified that Durichko responded: "That's usually his normal behavior.  You can't look too much into it.  It's – it's nothing."[13/]  Defendants dispute that Plaintiff reported the incident to Durichko and that Durichko responded in this manner.[14/]

On the two other occasions at issue, Livingston approached Plaintiff and told her that her "hair looked absolutely amazing," and that she should wear it like that more often.[15/]  Plaintiff again

---

[9/] Plaintiff's briefing appears to allude to a fourth incident in which Livingston reprimanded Plaintiff when she was too busy to participate in a fire drill.  As Defendants point out in their reply briefing, Doc. 21 at 4-6, the full text of Plaintiff's deposition reveals that the interaction concerned Plaintiff because Livingston was not her supervisor, and did not have the authority to reprimand her.  Plaintiff did not testify that this incident was part of the improper sexual conduct at issue in this case.  *See* Doc. 17-1 at 124:4 to 126:2.

[10/] Doc. 17-1 at 185:17-25; 43:8-17.

[11/] *Id.* at 186:18-22.

[12/] *Id.* at 187:3-6.

[13/] *Id.* at 187:16-18.

[14/] Doc. 15-2 at ¶ 13 (Durichko Affidavit).

[15/] Doc. 17-1 at 190:5-9, 146:2-15.

Case No. 1:15-CV-232
Gwin, J.

described feeling uncomfortable.[16]

Aside from these direct incidents of alleged harassment against Plaintiff, Plaintiff complains of witnessing the sexual harassment of Marie Barhouma, another Athenian employee who has a pending sex harassment case against Defendants.[17]  In particular, Plaintiff testifies that she witnessed Livingston kiss Barhouma, improperly touch Barhouma, and make unwelcome comments.[18]

Defendant Livingston denies making sexual comments to Plaintiff.[19]  He denies being aware that Plaintiff was uncomfortable with their interactions.[20]  Defendant Livingston also denies any improper conduct with Marie Barhouma.[21]

### B. Plaintiff's Pregnancy

Plaintiff found out that she was pregnant in April 2013.[22]  At some point during the pregnancy, she informed Durichko.[23]  Plaintiff reported that Durichko's response was "okay."[24]  Plaintiff had general discussions with Durichko about how she was feeling as the pregnancy progressed.[25]  Plaintiff argues that Defendants denied her an opportunity to return to work; either

---

[16]/*Id.* at 190:11-13.

[17]/*Barhouma v. Athenian Assisted Living, Ltd.*, 14-cv-2400, (N.D.Ohio).

[18]/Doc. 16 at 10-11.

[19]/Doc. 15-3 at ¶¶ 9-10 (Livingston affidavit).

[20]/*Id.*

[21]/*Id.* at ¶ 7.

[22]/Doc. 17-1 at 107:3.

[23]/*Id.* at 107:7-21.  Doc. 15-2 at ¶ 7.

[24]/Doc. 17-1 at 107:19-21.

[25]/*Id.* at 107:24 to 108:21 ("Q. Did you have any further discussions with Sue other than what you've just described about your pregnancy? A. Here and there, yes.  They would ask how I was feeling of how I was doing or how
(continued...)

-4-

Case No. 1:15-CV-232
Gwin, J.

because of her pregnancy or in retaliation for her complaints about Livingston's sexual harassment.

Plaintiff alleges that at some point during her employment at Athenian, she was passed over for a full-time position.[26]  Plaintiff has not put forward evidence that this occurred after Durichko found out about the pregnancy.[27]

Towards the end of December, Plaintiff stopped taking shifts at Athenian.  Plaintiff states that she let Athenian know "that I would intend on taking six weeks off, although I would establish contact before that if it could be arranged for me to have returned sooner than that."[28]  Her baby was born on December 30, 2013.[29]

Towards the end of January 2014, Plaintiff says she tried to contact Durichko through text messages and phone calls.  Plaintiff claims she asked Durichko to schedule Plaintiff for work in

---

[25]/(...continued)
I was looking or things of that nature.  Q: Was it your sense that there was – it was just kind of genuine concern or genuine – or human nature to ask how you're doing when you're pregnant? A: Exactly.").

[26]/*Id.* at 195:18 to 197:10.

[27]/In reviewing the record, the clearest timeline available is that the full-time position was open "roughly in the April/May [2013] timeframe" when a previous nurse named Michelle Grimes left.  *Id.* at 86:5-15.  However, the parties have not been able to identify when Durichko found out about Plaintiff's pregnancy, or when the final hiring decision at issue was made.  *Id.* at 195:18 to197:13 ("Q. Now, did you ever have a conversation with Sue Durichko concerning a full-time, full employment position at Athenian? A. Yes, I did.  Q. When did that take place. A. It took place the day that Michelle Grimes abruptly left her position at the Athenian.  She called me and told me that Michelle had left and that she needed to fill the full-time position, and I said – she wanted to know if I wanted it and I said that I did.  She said that it would be between me and Erin and she said that she would choose me before she chose Erin and that we needed to discuss vacation and paid time off. . . .  Q. Did you have any other conversations with ms. Durichko concerning the full-time position? A. I asked her another time about becoming a full-time employee and she didn't really indulge too far into that conversation.  She said she was thinking about it.  Q.  And were you pregnant at the time? A. Yes.  Q. *Did Ms. Durichko learn that you were pregnant at some point in time.*  A. Yes.  Q.  And who did you say the other person was? Erin? A. Yes.  Q. Was she pregnant? A. No.") (emphasis added).

[28]/*Id.* at 112:18-21.

[29]/*Id.* at 110:7 to 112:9.

Case No. 1:15-CV-232
Gwin, J.

February or March, 2014.[30/]  Plaintiff testified that Durichko ultimately responded that Plaintiff was no longer needed.[31/]  Plaintiff maintains that "we both had an understanding of what we had agreed on before I left and that was for me to return to my position where I had been working regularly each month."[32/]

By contrast, Defendants maintain that Plaintiff first contacted Durichko in mid-February, 2014, asking to be put on February's schedule.[33/]  Durichko responded that February's schedule was already set and that Plaintiff should contact Durichko again to be added to March's schedule. Durichko states that Plaintiff "never contacted me again and I removed her from the PRN list around April 2014."[34/]

Defendants state that Athenian did not need additional staffing when Plaintiff sought to be added to the schedule.[35/]

## II. Procedural History

Plaintiff brought eight claims against Defendants: (1) sex discrimination in violation of Ohio Revised Code Section 4112.02; (2) sex discrimination based on pregnancy in violation on Ohio Revised Code Section 4112.02; (3) retaliation under Ohio Revised Code Section 4112; (4) intentional infliction of emotional distress; (5) negligent hiring and retention; (6) sex discrimination

---

[30/]*Id.* at 114:21 to 116:4.
[31/]*Id.* at 116:2.
[32/]*Id.* at 116:16-22.
[33/]Doc. 15-2 at ¶ 9.
[34/]*Id.*
[35/]Doc. 15 at 3-4.

Case No. 1:15-CV-232
Gwin, J.

in violation of Title VII; and (7) retaliation in violation of Title VII; (8) violation of the Pregnancy

Discrimination Act, 42 U.S.C. § 2000.[36]

      Defendants ask for summary judgment on all claims.[37]  Plaintiff has separately moved for

partial summary judgment on the¬(1) federal and state sex discrimination claims; and (2) the

negligent hiring and retention claim.[38]


### III. Discussion

*A. Summary judgment standard*

      Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[39]

The moving party must first demonstrate that there is an absence of a genuine dispute as to a material

fact entitling it to judgment.[40]  Once the moving party has done so, the non-moving party must set

forth specific facts in the record—not its allegations or denials in pleadings—showing a triable

issue.[41]  The existence of some doubt as to the material facts is insufficient to defeat a motion for

summary judgment.[42]  But the Court views the facts and all reasonable inferences from those facts

in favor of the non-moving party.[43]

      The moving party may also meet its burden under Rule 56 by "demonstrating the absence of

---

[36]/Doc. 1-1.

[37]/Doc. 15.

[38]/Doc. 16.

[39]/*Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).

[40]/*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[41]/*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[42]/*Id.* at 586.

[43]/*Killion*, 761 F.3d at 580. (internal citation omitted).

Case No. 1:15-CV-232
Gwin, J.

evidence to support one of the essential elements of the nonmoving party's claim."[44]


### B. Sex discrimination based on pregnancy

Plaintiff brings a sex discrimination claim based on pregnancy under Ohio Revised Code § 4112.02.[45]  Federal case law interpreting Title VII, as amended by the Pregnancy Discrimination Act, applies in determining whether employment practices are discriminatory under Chapter 4112.[46]  Thus, the Court analyzes Plaintiff's sex discrimination claims based on pregnancy together.

A claim of discrimination on the basis of pregnancy "must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII."[47]  To establish a prima facie case of sex discrimination based on pregnancy, a plaintiff must show (1) that she was pregnant; (2) she was qualified for her job; (3) she was subjected to an adverse employment decision; and (4) there is a nexus between her pregnancy and the adverse employment decision.[48] The Sixth Circuit has held that in order to establish the fourth prong of the prima facie case, "the employee bears the burden of demonstrating that the employer had actual knowledge of her pregnancy at the time that the adverse employment action was taken.[49]

Like any Title VII case, a pregnancy discrimination claim in which the plaintiff does not

---

[44]/Marie v. American Red Cross, 771 F.3d. 344, 351 (6th Cir. 2014) (citing Celotex, 477 U.S. at 322-325)
[45]/ Doc 1-1 at 5-6.
[46]/ See Pizzimenti v. Oldcastle Glass, Inc., 666 F.Supp.2d 839, 844 (N.D. Ohio 2009).
[47]/ Boyd v. Harding Academy of Memphis, Inc., 88 F.3d 410, 413 (6th Cir. 1996).
[48]/ Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 658 (6th Cir. 2000).
[49]/ Prebilich-Holland v. Gaylord Entertainment Co., 297 F.3d 438, 444 (6th Cir. 2002).

Case No. 1:15-CV-232
Gwin, J.

have direct evidence of the discrimination is analyzed under the *McDonnell Douglas*[50]

evidentiary framework.  Once the plaintiff has made out a prima facie case of pregnancy

discrimination, the defendant then has the opportunity to present a legitimate, non-discriminatory

reason for the adverse action.[51]  In order to prevail on a motion for summary judgment, the

plaintiff must then rebut the proffered reason as a mere pretext for discriminatory action.[52]

Nobody disputes that Plaintiff Viglianco was both pregnant, and qualified for her job.

Plaintiff complains of two particular employment decisions: the failure to hire her as a full time

nurse, and the failure to assign her shifts after Plaintiff took time off for the pregnancy.  The

Court considers these both to be adverse employment decisions.[53]

However, Plaintiff has not met her burden in the failure to hire pregnancy discrimination

claim.  Plaintiff has not established a nexus between her pregnancy and the failure to be hired full

time.  She has not established that Durichko knew of Plaintiff's pregnancy at the time that the

hiring decision was made.  Moreover, she has not provided any direct or circumstantial evidence

related to the hiring process.  Plaintiff relies entirely on her own testimony, which merely

establishes that, at some point, Durichko learned of the pregnancy and, at some point, another

nurse received a full-time job, not her.  This is inadequate to support a prima facie case for

pregnancy discrimination.

---

[50]/411 U.S. 792 (1973).

[51]/*See Pizimenti*, 666 F.Supp.2d at 844.

[52]/*Id.*

[53]/Defendants protest that Plaintiff Viglianco did not have any expectation in future shifts because she was hired on an as-needed basis.  As a result, they argue, the failure to schedule her after the pregnancy cannot be an adverse employment decision.  However, Viglianco was a W-2 hourly worker, not an independent contractor.  *See* Doc. 17-1 at 117:9-13.  Failure to schedule her, and her ultimate removal from the PRN list, is a "materially adverse change in the terms or conditions of employment because of the employer's actions."  *Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 593 (6th Cir. 2007).

Case No. 1:15-CV-232
Gwin, J.

On the other hand, Plaintiff's pregnancy discrimination claim related to the failure to re-schedule her in February and March 2014 survives.  There is, arguably, a nexus between the pregnancy and the failure to re-schedule.   Plaintiff had fairly regular, if variable, shifts in the preceding nine months before taking time off to have her child.  There is no indication that her shifts would have changed had it not been for the pregnancy.

Defendant offers that Plaintiff was not re-scheduled because Athenian did not have staffing needs at the time that Plaintiff was ready to return.  However, there are disputed facts as to how far in advance of the scheduling Plaintiff contacted Durichko.  Moreover, it is undisputed that each month's schedule was made at some point in the preceding month.  A jury could reasonably find that it was a "mere pretext" to say there were no staffing needs when future months had not been scheduled yet.

The Court denies Defendants' motion as to pregnancy discrimination.


*C.  Sex discrimination based on gender.*

Plaintiff brings a sex discrimination claim based on hostile work environment under Ohio Revised Code Chapter 4112.  Federal case law interpreting Title VII applies in determining whether employment practices are discriminatory under Ohio Rev. Code Chapter 4112.[54/]  Thus, the Court analyzes Plaintiff's sex discrimination claims under both federal and state law together.

To establish a hostile work environment claim, a plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to unwanted harassment; (3) the harassment was based on her membership in the protected class; (4) the harassment unreasonably interfered

---

[54/]*See Hollowell v. Soc'y Bank & Trust, 605 N.E.2d 954, 958 (Ohio Ct. App.. 1992).*

-10-

Case No. 1:15-CV-232
Gwin, J.

with her work performance, creating a hostile work environment; and (5) the employer is

liable.[55]

A hostile work environment claim can survive only where "the workplace is permeated

with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to

alter the conditions of the victim's employment."[56]  The plaintiff must show both that a

reasonable person would find the environment objectively hostile and that the plaintiff personally

found the conduct severe or pervasive.[57]

Offhand comments and isolated incidents, unless extremely serious, are not to

discriminatory changes in the "terms and conditions of employment."[58]  Further, "while

psychological harm, like any other relevant factor, may be taken into account, no single factor is

required."[59]  As to the final prong, "[a]n employer is liable if it knew or should have known of

the charged sexual harassment and failed to implement prompt and appropriate corrective

action."[60]

Plaintiff fails to meet her burden in establishing a prima facie case of sex discrimination.

Viewing all facts in the light most favorable to the Plaintiff, Plaintiff has identified three sexual

harassment occurrences by Livingston.  First, an incident where Livingston approached her in a

"lustful" manner in a hallway and said "Let me just say that the nurses here are very pretty . . .

---

[55] *See Clay v. UPS, Inc.,* 501 F.3d 695, 706 (6th Cir. 2007).

[56] *Harris v. Forklift Sys.*510 U.S. 17, 21 (1993).

[57] *Williams v. Gen. Motors Corp*., 187 F.3d 553, 566-68 (6th Cir. 1999).

[58] *Hafford v. Seidner*, 183 F.3d 506, 512– 513 (6th Cir. 1999).

[59] *Harris*, 510 U.S. at 21.

[60] *Hafford*, 183 F.3d at 512-13.

Case No. 1:15-CV-232
Gwin, J.

yes they are . . . but you . . you are just something else.  You are unbelievably beautiful."[61]

Second, Plaintiff states that on two occasions, Livingston approached her and her that her "hair looked absolutely amazing." and that she should wear it like that more often.[62]  Lastly, Plaintiff points out that she was regularly exposed to Livingston's sexual harassment of Marie Barhouma including his repeated touching, comments, and, on one occasion, an unwelcome kiss.[63]

Defendants brush off these incidents as "innocuous" or mere "compliments."[64]  This is far from true, and demonstrates a profound misunderstanding of sexual harassment. Nevertheless, troubling incidents do not, on their own, meet Plaintiff's burden for prevailing on summary judgment for sex discrimination under Title VII and Ohio Revised Code Chapter 4112.

Plaintiff fails the fourth prong of a prima facie case for sex discrimination.  She has not shown that the harassment unreasonably interfered with her work performance, creating a hostile work environment.  Plaintiff has not been able to show a consistent pattern that rises beyond "isolated incidents."  She fails to demonstrate that Livingston's behavior created an objectively severe or pervasive environment of intimidation.  She fails to demonstrate that Livingston's actions altered the conditions of Plaintiff Viglianco's employment or hindered her ability to conduct her job.[65]

The Court denies Plaintiff's motion as to sex discrimination, and grants Defendants'.

---

[61]/Doc. 17-1 at 185:17-25.

[62]/Id. at 190:5-9, 146:2-15.

[63]/Doc. 16 at 10-11.

[64]/Doc 18 at 5, 6.

[65]/ See Doc. 17-1 at 177:2-20.

Case No. 1:15-CV-232
Gwin, J.

*D. Negligent Hiring and Retention*

The Ohio elements of a negligent hiring or retention claim are: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries."[66/]

Here, Plaintiff does not offer any facts to support a claim of negligent hiring.  However, Plaintiff does offer testimony to support a claim of negligent retention.  Although disputed, Plaintiff testifies that she reported Livingston's initial comment to her immediate supervisor, Durichko.  Moreover, Plaintiff highlights that her colleague, Marie Barhouma had complained directly to Athenian's administrator, Edmond Gates, on four separate occasions.  Plaintiff contends that Athenian took no corrective action after these reports.

Defendants respond that "there is no evidence supporting the contention that Viglianco reported conduct sufficiently severe or pervasive as to warrant an investigation on the part of the employer into Livingston's behavior."  But Plaintiff need not meet the sex discrimination standard to make out a prima facie case of negligent retention.  Rather, the Court instead consider Athenian's knowledge, Livingston's "incompetence" and misconduct, and proximate causation of Viglianco's injuries, if any.

There remain genuine issues of material fact as to the elements of negligent retention. A court considering a motion for summary judgment may not weigh evidence or make credibility

---

[66/]*Bush v. Am. Honda Motor Co., Inc.*, 227 F.Supp.2d 780, 801 (S.D. Ohio 2002).

-13-

Case No. 1:15-CV-232
Gwin, J.

determinations.[67/]  The Court denies both Plaintiff's and Defendants' motions for summary

judgment as to negligent retention.


     *E. Retaliation*

     Ohio Revised Code § 4112.02(I) and Title VII prohibit retaliatory actions against

employees who oppose, report, or participate in investigations involving conduct that allegedly

violates Ohio Revised Code §4112.01(I) or Title VII.[68/] The Court analyzes Plaintiff's retaliation

claims under both federal and state law together.

     The burden for establishing a retaliation claim under Ohio Revised Code § 4112 is

identical to the burden for establishing retaliation under the federal employment laws..[69/]  To

establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in activity

protected by Title VII; (2) her activity was known to the defendant; (3) thereafter, Athenian took

an employment action adverse to Plaintiff; and (4) there was a causal connection between

Plaintiff's protected activity and the adverse employment action by Athenian.[70/]

     A plaintiff's burden to establish a prima facie case of retaliation "is not onerous."[71/]

However, a defendant is entitled to summary judgment on a retaliation claim if he can prove that

the plaintiff will not be able to establish one of these elements.

     Here, Defendants are not entitled to summary judgment as to retaliation.  Plaintiff alleges

in her complaint that "[b]ecause Plaintiff complained that Mr. Livingston sexually harassed

---

[67/] *Adams v. Metiva,* 31 F.3d 375, 379 (6th Cir. 1994).

[68/] *See* 42 U.S.C. § 2000e-3(a).

[69/] *See Moorer v. Copley Twp.,* 98 F.Supp.2d 838, 845 (N.D.Ohio 2000).

[70/] *See McElroy v. Philips Med. Sys. N. Am., Inc.,* 127 F. App'x 161 (6th Cir. 2005).

[71/] *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir.1997) (quoting *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 377 (6th Cir. 1984)).

Case No. 1:15-CV-232
Gwin, J.

Plaintiff, Defendants terminated Plaintiff's employment with Athenian."  While the complaint to

Durichko about Livingston, and the failure to be scheduled after her maternity leave were six

months apart, the claim remains viable.[72]  Plaintiff Viglianco had worked for Defendant with

good reviews.  Defendant does not identify deficiencies in Plaintiff's earlier work.  Without some

justification for refusing to schedule Plaintiff for renewed work, a material issue exists whether

the termination and non-scheduling were retaliatory.

Defendant is not entitled to summary judgment on Plaintiff's retaliation claims.


*F. Intentional Infliction of Emotional Distress*

Plaintiff also brings an Ohio state law claim against Defendants for intentional infliction

of emotional distress. To recover on an intentional infliction of emotional distress claim, Plaintiff

must prove four elements:

> (1) that the actor either intended to cause emotional distress or knew or should
> have known that actions taken would result in serious emotional distress to the
> plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go
> "beyond all possible bounds of decency" and was such that it can be considered as
> "utterly intolerable in a civilized community," (3) that the actor's actions were the
> proximate cause of plaintiff's psychic injury, and (4) that the mental anguish
> suffered by plaintiff is serious and of a nature that "no reasonable man could be
> expected to endure it."[73]

"When claiming an intentional infliction of mental distress, only that conduct which

---

[72]Defendants calculate a nine month period.  Taking all inferences in Plaintiff's favor, six is more accurate.
Plaintiff testified that the harassment incident at issue happened between April and July 2013.  Doc. 17-1 at 43:7-17.
Plaintiff first got in touch about being on the schedule again in either January or February 2014.  The minimum amount
of time between is six months.

[73]*Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio App. Ct. 1983) (quoting Restatement (Second) Torts § 46 cmts. d,
j (1965)); *see also* *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995).

Case No. 1:15-CV-232
Gwin, J.

exceeds 'all possible bounds of decency' is actionable."[74] For the conduct to qualify as

sufficiently extreme and outrageous, "'[g]enerally, the case is one in which the recitation of the

facts to an average member of the community would arouse his resentment against the actor, and

lead him to exclaim, Outrageous!'"[75]

There remain material disputes as to Livingston's and Athenian's course of conduct.

Indeed, Defendant Livingston denies making any sexual comments towards Plaintiff.  However,

even taking Plaintiff's account of events as true, a reasonable jury could not conceivably find

Livingston's and Athenian's conduct to be "outrageous." Intentional infliction of emotional

distress sets a high bar, and Plaintiff here has not met it.

The Court grants Defendants' motion for summary judgment as to intentional infliction of

emotional distress.

### G. Claims against Edmond Gates

Finally, Defendants move for summary judgment as to claims against Defendant Edmond

Gates in his individual capacity.  The remaining claims are pregnancy discrimination, negligent

retention, and retaliation.  As Defendants point out, Plaintiff has failed to put forward any

evidence that Gates could be liable for pregnancy discrimination or retaliation.  Durichko alone

had the power to hire and fire Plaintiff. .

However, evidence has been submitted that Gates was Ron Livingston's supervisor.[76] As

a result, a claim against him in his individual capacity for negligent retention can be maintained.

---

[74] *Davis v. Billow Co. Falls Chapel*, 610 N.E.2d 1024, 1026 (Ohio 1991).

[75] *Yeager v. Local Union 20, Teamsters*, 453 N.E.2d 666, 671 (Ohio 1983) (quoting Restatement (Second) Torts § 46, cmt. d (1965)).

[76] Doc. 18-3 at ¶¶ 2-12.

Case No. 1:15-CV-232
Gwin, J.

The Court grants Defendants' motion for summary judgment as to the claim against Gates

for pregnancy discrimination and retaliation.  The Court denies Defendants' motion as to the

claim against Gates for negligent retention.

## IV.

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment

and **GRANTS IN PART** Defendants' motion for summary judgment in accordance with this

opinion.

IT IS SO ORDERED.

Dated: October 1, 2015.                                   s/          *James S. Gwin*
                                                          JAMES S. GWIN
                                                          UNITED STATES DISTRICT JUDGE

-17-